UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANA FARIAS, | ) | 1:09cv0286 DLB |
| | ) | |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BACKGROUND**

Plaintiff Ana Farias ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

**FACTS AND PRIOR PROCEEDINGS**[1]

Plaintiff filed her applications in October 2002, alleging disability since September 20, 2002, due to carpal tunnel syndrome in both hands and depression. AR 94-96, 1140123. After

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

her applications were denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 72-75, 78-82, 83.  ALJ James E. Ross held a hearing on July 4, 2004, and denied benefits on September 24, 2004.  AR 449-462, 54-62.  The Appeals Council vacated the ALJ's decision and remanded the action on May 12, 2005.  AR 67-70.

ALJ Ross held a second hearing on January 5, 2006.  AR 463-488.  He denied benefits on March 13, 2006.  AR 12-21.  The Appeals Council denied review on December 12, 2008.  AR 6-8.

Hearing Testimony

ALJ Ross held a hearing on January 5, 2006, in Fresno, California.  Plaintiff appeared with her attorney, Melissa Proudian, and an interpreter.  Vocational expert ("VE") Cheryl Chandler also appeared and testified.  AR 463.

Plaintiff explained that both of her hands hurt all the time and the pain has increased since the last hearing.  AR 467.  The swelling has also increased, more in the left hand, and she cannot move her fingers much.  She explained that her hands become badly swollen about once every three months, for about a week.  When her hands are swollen, she cannot do housework, pick up anything or cook.  AR 468.  She was last treated for carpal tunnel syndrome in September 2005, when her hands swelled and she had to take an anti-inflammatory for ten days.  AR 473.  She has had problems since that time, but no swelling.  AR 474.

Plaintiff further testified that sometimes the pain is so bad that it feels like it goes up her neck and she has to take Ibuprofen to sleep.  For the past month, she has had continuous pain on the right side of her neck.  AR 469.  Plaintiff believed that she could wash dishes for five minutes before needing to stop and rest for about five minutes.  AR 470.  She thought she could lift about 10 pounds.  AR 472.

Plaintiff testified that her depression has stayed the same.  AR 471.  She explained that it is very difficult because she cannot support her three children.  AR 472.  Plaintiff attempted to work in August 2005, though she could not remember where.  AR 473.  She was taking Effexor for her depression and anxiety.  AR 475-476.

1   Plaintiff believed that she could not perform her past job cleaning apartments because it
2 was "very tiring to have to reach up to clean." AR 476.
3   Plaintiff testified that she attended the English language school at the Chavez School in
4 2004 and she was now in a different program. Plaintiff could read "some" in English and could
5 understand about 50 percent of the newspaper. She attended school through the ninth grade in
6 Mexico. AR 477.
7   For all hypothetical questions posed to the VE, the ALJ asked the VE to assume that
8 Plaintiff was illiterate. AR 477.
9   For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age,
10 education and past experience. This person could lift 20 pounds occasionally, 10 pounds
11 frequently, and sit, stand or walk for six of eight hours. This person could not perform forceful,
12 repetitive grasping or twisting with the right upper extremity. This person would also be limited
13 to simple, repetitive work. AR 478.
14   The VE testified that such a person could not perform Plaintiff's past cleaning work
15 because it requires too much repetitive force. Nor could this person perform some of Plaintiff's
16 past packing work, which was classified at the medium exertional level. AR 479. This person
17 could perform Plaintiff's past work as a grape packer and/or apple and peach sorter, however. AR
18 480. The VE indicated that these were light positions, and because Plaintiff was working with
19 delicate fruit, she did not have to lift more than 10 pounds or perform forceful lifting, grasping or
20 pulling. AR 478, 480-481. The VE explained that as generally performed, packing jobs are
21 medium exertional level positions because they require lifting boxes.
22   The VE further testified that Plaintiff's past work sorting fruit would not require forceful
23 movements and she could therefore perform that past work. AR 480-481. Plaintiff could also
24 perform the positions of cafeteria attendant and assembler. AR 481.
25   Plaintiff's attorney asked the VE to assume one additional limitation- no right wrist
26 twisting. The VE testified that his person could not perform the previously identified jobs, though
27 she explained that she would need the doctor's clarification before answering further. AR 483-
28 484.

3

Plaintiff's attorney next asked the VE to assume a person who could lift 20 pounds occasionally, 10 pounds frequently, and sit, stand or walk for six of eight hours. This person could not perform repetitive heavy lifting, pushing, pulling, gripping, and grasping. This person could not perform vigorous twisting with the left wrist. The VE testified that this person could perform Plaintiff's past work as well as the other positions identified. AR 486.

If this person was limited to lifting 10 pounds, sitting, standing and walking six hours each and using their hands for five to ten minutes before needing a 15 minute break, the VE testified that this person could not perform any work. AR 486-487.

Medical Record

Nerve conduction studies performed on May 17, 2001, indicated entrapment of the median nerve at both wrists. AR 427.

Plaintiff was seen by Madhav Suri, M.D., on May 17, 2001. He diagnosed bilateral hand parathesias, right greater than left, with Tinel's sign positive bilaterally and functional decreased hand grip strength most suggested of bilateral median nerve entrapment at the wrists. Dr. Suri suggested conservative management, including avoidance of repetitive strain injury to the wrists and use of bilateral wrist splints. AR 429-430.

X-rays of Plaintiff's right forearm taken May 29, 2001, revealed radioulnar synostosis attributed to a congenital anomaly. AR 189-190.

On August 22, 2002, Plaintiff saw Alan Sanders, M.D., for an Agreed Medical Examination stemming from a February 2000 injury to her left wrist. Dr. Sanders diagnosed chronic residual status post left wrist strain with underlying ganglion. He also believed that Plaintiff had carpal tunnel syndrome based on nerve tests. As to her left wrist, Dr. Sanders recommended that Plaintiff be precluded from repetitive heavy lifting, repetitive heavy pushing and pulling, repetitive heavy gripping and grasping, and vigorous twisting and turning of the wrist. AR 337-346.

On January 17, 2003, State agency physician Glenn Ikawa, M.D., a psychiatrist, opined that Plaintiff could perform simple, repetitive tasks and finish an eight hour work day. She could also relate and adapt. AR 303.

On January 25, 2003, Plaintiff saw Steven Kang, M.D., for a consultive examination. Plaintiff complained of bilateral wrist pain and reported that she was born with a congenital deformity. On examination, grip strength in both hands was reduced. The left wrist was grossly normal without any deformity. The right wrist had a bony deformity at the distal radial head and Plaintiff could not supinate the wrist more than 60 degrees. Strength was normal in the bilateral wrists and fingers. Sensation was normal and Phalen's and Tinel's signs were negative. AR 307-310.

Dr. Kang diagnosed right congenital radioulnar synostosis, bilateral carpal tunnel syndrome and anxiety. He opined that she could lift and carry 20 pounds occasionally and 10 pounds frequently with the right wrist. She could sit, stand and walk without restriction. Plaintiff would also have postural limitations on the right hand. AR 311.

On February 13, 2003, State Agency physician James V. Glaser, M.D., opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently with her right wrist, stand and/or walk for about six hours and sit for about six hours. Plaintiff was limited in pushing and pulling with her right upper extremity and was limited in performing handling/gross manipulation with her right hand. Specifically, Plaintiff could not perform forceful grasping and torquing with her right hand. AR 312-318.

Nerve conduction studies performed on July 28, 2003, were normal. AR 425.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of moderate carpal tunnel syndrome, an anxiety disorder and a history of alcohol abuse. Despite these impairments, Plaintiff retained the residual functional capacity ("RFC") lift and carry 20 pounds occasionally, 10 pounds frequently, and sit, stand and walk for six hours. Plaintiff could not perform repetitive forceful grasping or twisting with her right upper extremity. She was able to perform simple, repetitive tasks. AR 19. Based on the testimony of the VE, the ALJ concluded that Plaintiff could perform her past relevant work as a packer and sorter. AR 20. Alternatively, Plaintiff could perform a significant number of jobs in the national economy, including cafeteria attendant and assembler. AR 20.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).² Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (moderate carpal tunnel syndrome, an anxiety disorder and a history of alcohol abuse) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) could perform her past relevant work; or alternatively, (5) retains the RFC to perform a significant number of jobs.  AR 17-21.

Here, Plaintiff argues that the ALJ (1) erred by finding that she could perform her past relevant work, or other work in the alternative; and (2) improperly assessed the lay witness statements.

**DISCUSSION**

A.   Step Five Determination

Plaintiff argues that her RFC, as determined by the ALJ, prevents her from performing her past relevant work, or any other work in the national economy.

At step four, claimants have the burden of showing that they can no longer perform their past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(e) and 416.920(e).  Once they have met this burden, the burden at step five shifts to the Secretary to show that, taking into account a claimant's age, education, and vocational background, she can perform any substantial gainful work in the national economy.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion.  *Pinto*, 249 F.3d at 844; SSR 82-62. The ALJ must look at the claimant's RFC and the physical and mental demands of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(e) and 416.920(e).  The claimant must be able to perform (1) the actual functional demands and job duties of a particular past relevant job; or (2)

---

²All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

7

the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61. The ALJ must make specific findings as to the claimant's RFC, the physical and mental demands of the past relevant work, and the relation of the RFC to the past work. SSR 82-62.

Here, the ALJ determined that Plaintiff retained the RFC to lift and carry 20 pounds occasionally, 10 pounds frequently, and sit, stand and walk for six hours. Plaintiff could not perform repetitive forceful grasping or twisting with her right upper extremity. She was able to perform simple, repetitive tasks. AR 19. Based on the VE's testimony, the ALJ concluded:

> Ms. Chandler, the vocational expert, testified that the claimant's work as a grape packer was light work as she performed it, but is generally performed in the national economy as medium work; and her work as a peach and apple sorter was light work. Ms. Chandler testified that the claimant could return to her past relevant work as a packer and sorter.

AR 20.

Plaintiff does not challenge the RFC finding. Rather, she contends that she (1) cannot perform her past work as performed because she no longer has the physical ability to do so; and (2) cannot perform her past work as generally performed because she is illiterate and cannot communicate in English.

The ALJ determined that Plaintiff could perform her past work as a grape packer as she actually performed it. As to the apple and peach sorter positions, however, it is unclear whether he determined that she could perform the jobs as actually performed or as generally performed. The Court will therefore examine both possibilities. *See* Pinto, 249 F.3d at 845 (the court has never required explicit findings at step four regarding past relevant work as actually performed *and* as generally performed, and where there is no specific finding, the court first reviews work as actually performed and then work as generally performed) (emphasis in original).

In arguing that she cannot perform her past work as she actually performed it, Plaintiff contends that she testified that the positions required her to stand for eight hours. Plaintiff's RFC, however, provides that she can stand for only six hours. According to Social Security Regulations, a claimant's testimony or a properly completed vocational report can define past work as actually performed. Pinto, 249 F.3d at 845; SSR 82-61. Plaintiff reported that the grape

packing position and apple sorting positions required her to stand for eight hours and the ALJ did not make any adverse findings.[3]  AR 116, 132.  To the extent the ALJ determined that Plaintiff could perform her past relevant work as she performed it, the finding is not supported by the evidence.[4]

As to the ALJ's finding that Plaintiff could perform the apple and peach sorter positions as generally performed, Plaintiff contends that the finding is incorrect because she is illiterate and cannot communicate in English.  Plaintiff correctly notes that the ALJ asked the VE to assume, for the purposes of the hypothetical questions, that Plaintiff was illiterate.  AR 477.  He specifically stated, "It's so limited that she would probably be considered illiterate in English."  AR 477.  All of the positions identified by the VE, however, require Level 1 reading, writing and speaking skills pursuant to the Dictionary of Occupational Titles ("DOT").  See Exhibits 1, 2 and 3, attached to Plaintiff's Opening Brief.  Level 1 requires the ability to recognize the meaning of 2,500 two- or three-syllable words, read at a rate of 95-120 words per minute, compare similarities and differences between words, print simple sentences and speak simple sentences.  Given the ALJ's statement that Plaintiff was so limited in the English language that she would likely be considered illiterate, the VE deviated from the DOT in finding that Plaintiff could perform positions that require at least some level of literacy.  See Pinto, 249 F.3d at 847 (where ALJ made finding that Plaintiff was illiterate, he was required to explain the deviation from the DOT).  The ALJ failed to asked the VE to explain the deviation, nor did he confirm that the VE's testimony was consistent with the DOT.  Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007).  His failure to do so renders the VE testimony unsupported by substantial evidence.

Moreover, the ALJ wholly fails to discuss Plaintiff's literacy in his decision.  Although his statement at the hearing certainly suggests that he deemed Plaintiff to be illiterate, he makes no specific finding in his decision.  This renders the Court unable to completely review his analysis.  Defendant urges the Court to find that Plaintiff was sufficiently literate to perform the identified

---

[3] There is no evidence specific to the peach sorter position, though a majority of Plaintiff's packing/sorter positions required her to stand for eight hours.  AR 116, 129, 132, 134.

[4] Defendant fails to address this argument.

9

1  work, but such a finding would be an inappropriate post hoc rationalization.  A reviewing court
2  cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner.
3  *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).
4         Based on the above, the ALJ's finding at step four and his alternative step five finding is
5  not supported by substantial evidence and is not free of legal error.  Remand will be discussed at
6  the end of this opinion.
7  B.      <u>Lay Witness Statements</u>
8         Finally, Plaintiff argues that the ALJ failed to provide legally sufficient reasons for
9  rejecting the third party questionnaires completed by Walter Torres and Alma Iriarte.
10        "In determining whether a claimant is disabled, an ALJ must consider lay witness
11 testimony concerning a claimant's ability to work."  *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th
12 Cir. 2009) (citing *Stout v. Comm'r,* 454 F.3d 1050, 1053 (9th Cir.2006)); see also 20 C.F.R. §§
13 404.1513(d)(4), (e).  Such testimony is competent evidence and " cannot be disregarded without
14 comment."  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996).  If an ALJ disregards the
15 testimony of a lay witness, the ALJ must provide reasons "that are germane to each witness."  *Id.*
16 The reasons "germane to each witness" must be specific.  *Stout*, 454 F.3d at 1054 (explaining that
17 "the ALJ, not the district court, is required to provide specific reasons for rejecting lay
18 testimony").
19        In his decision, the ALJ set forth the conclusions of both Ms. Iriarte and Mr. Torres.  Ms.
20 Iriarte, Plaintiff's sister, opined that Plaintiff could no longer work because her hands swell and
21 hurt.  AR 18, 171-172.  Similarly, Mr. Torres, Plaintiff's son, stated that he saw Plaintiff in pain
22 when she ironed, trimmed plants, prepared food or did anything that required her to make repeated
23 hand movements.  AR 18, 170.  The ALJ then explained that Ms. Iriarte and Mr. Torres "may
24 have seen her following an acute exacerbation of her symptoms, but this is not her baseline
25 condition."  AR 18-19.  The ALJ further explained that their description of Plaintiff's limitations
26 "conflicts with the treating physician's records and the paucity of the objective clinical findings."
27 AR 19.
28

Plaintiff contends that the ALJ erred by rejecting their opinions based solely on the lack of objective medical evidence. In addition to citing the lack of medical evidence, however, the ALJ also explained that the witnesses were describing Plaintiff during an exacerbation of her symptoms. Indeed, Plaintiff testified that her hands swell about once every three months. When her hands are swollen, she cannot do housework, pick up anything or cook. AR 468.

The ALJ therefore provided reasons that were germane to each witness in rejecting their testimony. His analysis is supported by substantial evidence and is free of legal error.

C.      Remand

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

The Court has determined that the ALJ erred in finding that Plaintiff could perform either her past work or other work in the national economy. The Court finds that this error can be corrected with further proceedings. On remand, the ALJ shall make a specific finding as to Plaintiff's literacy and sufficiently explain any deviation from the DOT.

The Court therefore finds that this action should be remanded for further analysis at step four and/or step five.

### **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Ana Farias and against Defendant Michael J. Astrue, Commissioner of Social Security.


IT IS SO ORDERED.

Dated:   **March 4, 2010**                    **/s/ Dennis L. Beck**
                                             UNITED STATES MAGISTRATE JUDGE